**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Benedict Akindutire,[1]                                     Civil No. 26-1661 (DWF/SGE)

        Plaintiff,

v.                                                                      **MEMORANDUM**
                                                                          **OPINION AND ORDER**
Northrop Grumman Systems Corporation,

        Defendant.

**INTRODUCTION**

This matter is before the Court on six motions. Defendant Northrop Grumman Systems Corporation ("Northrop") moves to dismiss part of the complaint, compel arbitration as to the rest of the complaint, stay the litigation, and amend the case caption. (Doc. No. 16.) *Pro se* Plaintiff Benedict Akindutire moves to proceed under a pseudonym and file identifying information under seal (Doc. Nos. 3, 4, 8), to stay amendment of the case caption (Doc. No. 45), and for a preliminary injunction (Doc. No. 48). For the reasons set forth below, the Court grants in part and denies in part Northrop's motions and denies Akindutire's motions.

---

[1]     Plaintiff filed under the pseudonym JLA. For the reasons discussed below, the Court finds that a pseudonym is unnecessary and uses his name throughout. The Clerk of Court is directed to replace "JLA, *Pseudonym*" with "Benedict Akindutire" on the docket.

## BACKGROUND

Akindutire was employed by Northrop as a Principal Engineer Quality. (Doc. No. 15 ("Am. Compl.") ¶¶ 10-11; Doc. No. 64 at 2.) This litigation involves alleged discrimination and retaliation against Akindutire during his employment.

## I.    Akindutire's Employment at Northrop

Akindutire began working at Northrop in November 2021. (Am. Compl. ¶ 15; Doc. No. 64 at 2.) His job functions included documentation integrity and contractual quality assurance for federal government contracts, namely Contractor Data Requirement List ("CDRL"), Measurement System Evaluation ("MSE"), First Article Acceptance Test ("FAAT"), and First Article Configuration Audit Report ("FACAR") deliverables. (Am. Compl. ¶¶ 1, 16, 49.)

Beginning in July 2023, Akindutire reported what he believed to be documentation deficiencies in submissions for government contracts. (*Id.* ¶ 20.) Akindutire informed supervisors that MSE and FAAT documentation was required for contractual compliance. (*Id.* ¶¶ 18, 26.) He warned that incomplete documentation could result in false certification of claims to the government. (*Id.* ¶¶ 21-22.) His supervisors, program manager Harsh Potlapalli and functional manager Jason Berg, told him not to pursue the issues further. (*See id.* ¶¶ 18, 28-29.) Berg told him not to discuss the violations with anyone. (*Id.* ¶ 29.) Potlapalli told him not to submit MSE documentation and to "let sleeping dogs lie." (*Id.* ¶¶ 19, 27-28.)

Adverse employment actions followed Akindutire's reports. For the first year and a half of his employment, Akindutire was consistently given positive performance

2

reviews.  (*Id.* ¶¶ 15, 48; *see also* Doc. Nos. 50-1 (2022 year-end review), 50-2 (2022 mid-year review).)  In June 2023, Akindutire was given a positive performance review that explicitly recognized his understanding of contractual requirements.  (Am. Compl. ¶ 48; *see also* Doc. No. 50 at 3 (2023 mid-year review).)  Then, in August 2023, following the reports of noncompliance, he was removed from his position on the program team.  (Am. Compl. ¶ 33.)  In December 2023, he received his first negative performance evaluation.  (*Id.* ¶¶ 34, 53-54.)  In March 2024, Akindutire was issued a Memorandum of Expectations ("MOE") which cited performance concerns.  (*Id.* ¶ 35; Doc. No. 64-1.[2])  The MOE listed three specific areas for improvement.  (Doc. No. 64-1 at 2.)  After thirty days on the MOE, Akindutire's manager found that Akindutire had not met expectations and placed him on a Performance Improvement Plan ("PIP").  (*Id.* at 3; *see also* Am. Compl. ¶ 35.)  The PIP was unsuccessful.  (Doc. No. 64-2 at 2.)  On August 28, 2024, Northrop terminated Akindutire's employment.  (Am. Compl. ¶ 36; Doc. No. 64-3.)  The termination letter specifically referenced the failed PIP as the reason for discharge.  (Doc. No. 64-3 at 2.)

Akindutire alleges that these adverse actions were in part retaliation for his reports and in part motivated by discrimination.  (*See* Am. Compl. at 11.)  Akindutire is a Black male of Nigerian national origin.  (*Id.* ¶ 37.)  He alleges that a supervisor referenced his "culture" when questioning his learning style during disciplinary discussions.  (*Id.* ¶¶ 38,

---

[2]    Akindutire challenges the declaration through which the MOE and PIP were produced.  (Doc. No. 73 at 2-6.)  The Court does not rely on that declaration but on the attached exhibits, which are embraced by the complaint.  (*See* Am. Compl. ¶¶ 4, 53, 71.)

62.)  Additionally, Akindutire identifies three non-Black engineers who participated in the same contractual compliance functions but who faced no adverse employment action: Tim Spears, Jon Podolske, and Terry Koch.  (*Id.* ¶¶ 39, 64.)  At least two of those comparators reported to the same supervisor.  (*Id.* ¶ 40.)  One of those engineers, Koch, reported similar compliance concerns.  (*Id.* ¶ 65; *see also* Doc. No. 36 at 8 (identifying Koch).)  Further, Akindutire alleges that a supervisor expressed preference for a non-Black engineer to assume the responsibilities taken away from Akindutire.  (*Id.* ¶ 61.)

## II.    Procedural Posture

Akindutire signed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination (the "EEOC Charge") on September 13, 2024.  (Doc. No. 20 at 2; *see* Am. Compl. ¶ 12.)  The EEOC Charge alleged that Akindutire was subjected to different terms of employment and held to different standards than his non-Black counterparts.  (Doc. No. 20 at 2.)  The Charge also alleged that he complained about the discrimination but nothing was done in response.  (*Id.*)  The EEOC issued Akindutire a notice of right to sue.  (Am. Compl. ¶ 14; Doc. No. 2 at 2.)  He commenced this action within ninety days.  (*See* Doc. No. 1.)  Akindutire alleges discrimination in violation of Title VII (Count I), retaliation in violation of Title VII (Count II), retaliation in violation of the False Claims Act (Count III), retaliation in violation of the Minnesota Whistleblower Act (Count IV), and discrimination in violation of the Minnesota Human Rights Act (Count V).  (Am. Compl. at 11.)

4

**III.    Arbitration Agreement**

Upon hiring, Northrop required Akindutire to sign onboarding documentation. (Doc. No. 64 at 2-3.)  Akindutire electronically signed the necessary documents, including the Agreement Regarding At-Will Employment, Arbitration of Disputes, Intellectual Property Rights, and Procurement Integrity contract (the "Arbitration Agreement").  (Doc. No. 22-1 (documenting Akindutire's electronic signature); Doc. No. 23 (the agreement).)  The Arbitration Agreement stated:

> I agree to submit disputes between me and the company to final and binding arbitration in accordance with CTM H200:  USHR 2-32, (the "arbitration program"), which is incorporated into this agreement by reference.  I will accept an arbitrator's award under the arbitration program as the final, binding, and exclusive determination of such disputes, subject to the standards of review set forth in the Federal Arbitration Act, 9 U.S.C. §§ 1-16, or other applicable law.  I have read the arbitration program, a copy of which has been provided to me with this agreement.
>
> BY SIGNING THIS AGREEMENT, I AGREE TO SUBMIT ALL CLAIMS COVERED BY THE ARBITRATION PROGRAM TO FINAL AND BINDING ARBITRATION UNDER THAT PROGRAM.  BY DOING THIS, I AM GIVING UP ANY RIGHT TO HAVE SUCH CLAIMS DECIDED BY A COURT OR JURY.

(Doc. No. 23 ¶ 4.)

The human resources manual incorporated by reference is the Arbitration and Mediation manual (the "Manual").  (Doc. No. 23-1.)  The Manual thoroughly describes the arbitration process.  Specifically, the Manual states that the arbitration program "covers and applies to any claim, controversy, or dispute, past, present, or future: [w]hich in any way arises out of, relates to, or is associated with your employment with the company, the termination of your employment, or any communications with third

parties regarding or related to your employment." (*Id.* at 3.)  Examples of claims that are covered are provided, including claims for "[u]nlawful discrimination or harassment, including but not limited to discrimination or harassment based on race, sex, religion, national origin, age, disability, or any other status as protected and defined by applicable law," "[u]nlawful retaliation," and "[a]ny violation of applicable federal, state, or local law, statute, ordinance, or regulation." (*Id.*)

Claims which are exempted from arbitration include any claim "[a]s to which an agreement to arbitrate such claims is prohibited by law." (*Id.*)  Namely, "no employee is required to arbitrate any claim under Title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention." (*Id.*)  The Manual explains that such exemption "is intended to implement the provisions of Public Law 111 P.L. 118, popularly known as the Franken Amendment, and shall be interpreted and applied consistently with the scope of the Franken Amendment." (*Id.*)

The Manual also explains that the arbitration requirements survive the employment relationship.  (*Id.* at 4.)  Arbitration applies "to any covered claim whether it arises or is asserted during or after termination of [the employee's] employment with the company." (*Id.*)

Finally, the Manual explains the rights to injunctive relief pending arbitration: "[t]o the fullest extent permitted by law in the jurisdiction where the arbitration is held

. . . either party retains all rights to seek a preliminary injunction or other provisional relief to maintain the status quo pending the outcome of the arbitration." (*Id.*)

The Manual was updated at the end of 2023. (Doc. No. 23-2 at 2.) The relevant terms did not change as a result of that update. Akindutire was not required to sign new employment contracts indicating assent to the terms of the updated Manual. (*See* Doc. No. 22-1.) However, both the Manual and its updated version specified that "[b]y accepting or continuing employment, employees covered by this Program agree to submit any covered claims to binding arbitration, rather than to have such claims heard by a court, jury, or government agency." (Doc. No. 23-1 at 4; Doc. No. 23-2 at 4.) Akinditure continued to work at Northrop for another eight months after the updated Manual was issued.

## DISCUSSION

There are various overlapping motions before the Court. The Court begins with the merits of Akindutire's Title VII claims. (*See* Doc. No. 16.) The Court then turns to the arbitrability of his non-Title VII claims and Northrop's request to stay the litigation pending arbitration. (*See id.*) The Court then turns to Akindutire's motion for preliminary injunction seeking emergency relief in the form of reinstatement. (*See* Doc. No. 48.) And, finally, the Court ends with the motions relating to Akindutire's ability to proceed under a pseudonym and to file identifying information under seal. (*See* Doc. Nos. 3, 4, 8, 16, 45.)

7

I.    **Motion to Dismiss**

A.    **Legal Standard**

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may also consider certain matters outside of the pleadings, including matters of public record or materials embraced by the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

8

**B.**     **Title VII Exhaustion**

As a preliminary issue, Title VII claims require exhaustion of administrative remedies.  To bring a Title VII claim in court, an employee must first file a charge with the EEOC within 300 days of the allegedly unlawful employment practice.  *See* 42 U.S.C. § 2000e-5(e)(1); *see also, e.g.*, *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 898 (8th Cir. 2024).  Each discrete discriminatory action must be alleged in a charge to be properly exhausted.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002).  However, a plaintiff may bring claims that grow out of or are reasonably related to the substance of the administrative charge.  *E.g.*, *Ringhofer*, 102 F.4th at 898-99.

Akindutire was issued a notice of his right to sue based off the EEOC Charge.  The EEOC Charge alleged discrimination which is now the basis of Count I, so Akindutire's discrimination claim was properly exhausted.  However, the EEOC Charge did not address retaliation.  And because the EEOC Charge was filed after his termination, it is not reasonably related to the charge.  *See Wedow v. City of Kansas City*, 442 F.3d 661, 672-73 (8th Cir. 2006).  Akindutire's Title VII retaliation claim was not properly exhausted and is therefore dismissed.[3]  Further, the 300-day statute of limitations to bring

---

[3]     Akindutire filed a supplemental brief in which he argued for the first time that he met exhaustion requirements by filing a complaint with the U.S. Department of Labor Office of Federal Contract Compliance Programs ("OFCCP").  (*See* Doc. No. 73 at 14-18.)  However, the OFCCP complaint was not mentioned in his amended complaint and will therefore not be considered by the Court.  *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (noting that courts cannot consider facts not in or embraced by the complaint at the motion to dismiss stage).  Moreover, even for *pro se* litigants, the Court need not consider completely new arguments in response briefing, let alone supplemental briefing.  *E.g.*, *Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 549 (8th Cir. 2017) (explaining that arguments raised for the first time in reply briefing are

a retaliation claim has expired, so the claim is dismissed with prejudice.[4]  *See, e.g.,*

*Perkins v. City of Minneapolis*, No. 23-cv-3810, 2025 WL 331858, at \*6 (D. Minn.

Jan. 29, 2025) (dismissing a Title VII claim with prejudice because the statute of

limitations had expired).

### C.    Title VII Discrimination Claim

In Count I, Akindutire alleges that Northrop discriminated against him on the basis

of race and national origin in violation of Title VII.  (Am. Compl. at 11.)  Title VII

prohibits discrimination with respect to terms and conditions of employment.  42 U.S.C.

§ 2000e-2(a)(1).  To state a claim under Title VII for discrimination, a plaintiff must show

that he "(1) is within the protected class, (2) was qualified to perform the job, (3) suffered

an adverse employment action, and (4) has facts that give rise to an inference of

discrimination."  *Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009).  The first three

elements are undisputed.  (*See* Doc. No. 18 at 10-12.)  Akindutire is a Black male of

Nigerian national origin, who had satisfactory performance reviews, but was

subsequently terminated.  *See, e.g.*, *Smith v. Mayo Clinic*, 158 F. Supp. 3d 764, 770

---

generally not considered); *see also Jackson v. U.S. Parole Comm'n*, 131 F.3d 143, at \*2 (8th Cir. 1997) (per curiam unpublished table decision) (declining to consider a new argument from a *pro se* litigant raised in supplemental briefing).  The OFCCP-exhaustion theory is dismissed as improperly raised.

[4]    Even if the Court considered the OFCCP complaint, which was timely filed, the OFCCP complaint was closed.  (*See* Doc. No. 70-1.)  And Akindutire abandoned that complaint with the EEOC when he filed the EEOC Charge.  *See generally Hussey v. Vantage Fin., LLC*, No. 24-cv-3679, 2025 WL 2336980, at \*3 (D. Minn. Aug. 13, 2025) (discussing abandonment of EEOC claims).  There is no open retaliation complaint for Akindutire to pursue.

(D. Minn. 2016).  The question for the Court is whether the facts as alleged give rise to an inference of discrimination.  Such an inference can be shown in a variety of ways, including more favorable treatment of similarly-situated employees not in the protected class, biased comments from a decisionmaker, failure to follow internal policies, or shifting explanations of the employment decision.  *See, e.g.*, *Grant v. City of Blytheville*, 841 F.3d 767, 774 (8th Cir. 2016) (discussing the flexible evidentiary standard).

The complaint identifies three engineers (Spears, Podolske, and Koch) who worked on the same contracts and did not face adverse employment actions, at least one of whom (Koch) reported similar compliance concerns.  Allegations regarding Spears and Podolske are irrelevant because they did not report any compliance concerns and therefore did not engage in similar conduct.  However, the allegations that Koch participated in FAAT, FACAR, and related compliance, reported to the same supervisor, and reported compliance concerns is sufficient pleading to establish that Akindutire was similarly situated to Koch.  *See Edmonds v. Minneapolis Pub. Schs., Special Sch. Dist. 1*, 368 F. Supp. 3d 1329, 1339 (D. Minn. 2018) ("A similarly situated employee is one who is not a member of the protected group and who dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." (citation modified)).  The complaint further alleges that Koch faced no disciplinary action, yet Akindutire did, which establishes differential treatment between similarly-situated employees.  *See, e.g.*, *Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1058 (8th Cir. 2020) ("Employees are similarly situated only when they are similarly situated in all relevant respects and are involved in

11

or accused of the same offense and are disciplined in different ways." (citation modified)). The facts as pled create an inference of discrimination based on favorable treatment of a similarly-situated employee.

Akindutire has pled sufficient facts to sustain a Title VII racial discrimination claim. The Court need not consider Akindutire's other examples of alleged discrimination. Northrop's motion to dismiss is denied as to Count I.

## II.      Motion to Compel Arbitration

### A.      Legal Standard

A motion to compel arbitration is evaluated under the Federal Rules of Civil Procedure either as a Rule 12(b)(6) motion to dismiss or as a Rule 56 motion for summary judgment, depending on whether the Court considers matters outside of the pleadings. *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018); *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881-82 (8th Cir. 2017). The parties have presented and the Court has considered matters outside of the pleadings,[5] so the Court treats this motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *see also City of Benkelman*, 867 F.3d at 882.

Summary judgment is proper if the moving party shows that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). A party opposing a properly supported motion for summary judgment must demonstrate the

---

[5]      Neither the Arbitration Agreement nor the incorporated Manual were embraced by the complaint. (*See* Am. Compl. ¶ 9.)

12

existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009).

## B.      Analysis

A district court's role in a motion to compel arbitration is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute. 9 U.S.C. § 2; *see also, e.g.*, *Foster v. Walmart, Inc.*, 15 F.4th 860, 862 (8th Cir. 2021). These "threshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator." *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014). The question of whether a valid agreement exists is governed by state law; the question of whether a dispute falls within the scope of that agreement is governed by federal law. *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009).

### 1.      Validity of the Arbitration Agreement

Through the Federal Arbitration Act ("FAA"), Congress established a strong federal policy favoring arbitration. *See Shearson/Am. Express, Inc. v. McMahon*,

13

482 U.S. 220, 226 (1987).  The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation modified).  "[A] court will enforce an arbitration agreement unless a party can show it will not be able to vindicate its rights in the arbitral forum."  *Siebert v. Amateur Athletic Union of the U.S., Inc.*, 422 F. Supp. 2d 1033, 1038 (D. Minn. 2006) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)).

Because arbitration agreements are contracts, there must be mutual assent of the parties.[6]  *Foster*, 15 F.4th at 863.  Under Minnesota law, a party's assent to a contract is judged by the party's objective, rather than subjective, intent.  *Siebert*, 422 F. Supp. 2d at 1039; *Riley Bros. Constr., Inc. v. Shuck*, 704 N.W.2d 197, 202 (Minn. Ct. App. 2005).  Akindutire electronically signed the Arbitration Agreement after being presented with the terms.  That affirmative action expressed assent to arbitration.  *See Jordan v. Best Buy Co.*, No. 24-cv-1066, 2025 WL 580894, at *4 (D. Minn. Feb. 21, 2025) (discussing assent to internet contracts).  Further, that signature indicated that he read and understood that

---

[6]     The Arbitration Agreement is governed by Virginia law, per the choice-of-law provision.  (Doc. No. 23 ¶ 14.)  However, the parties both use Minnesota law in briefing. (*See* Doc. No. 18 at 19-23; Doc. No. 38.)  The Court therefore applies Minnesota law when determining the validity of the agreement.  Regardless, the outcome would be the same under Virginia law.  *See, e.g.*, *Moorman v. Blackstock, Inc.*, 661 S.E.2d 404, 409 (Va. 2008) (requiring mutual assent and explaining that mutual assent is determined by outward expressions of the parties' intentions).

the Arbitration Agreement incorporated the Manual.  The Manual was provided to Akindutire and explained the details of the arbitration program.  *See Halbach v. Great-West Life & Annuity Ins. Co.*, 561 F.3d 872, 876 (8th Cir. 2009) ("[A] writing may incorporate another document if the terms of the incorporated document are known or easily available to the contracting parties.").  By signing the Arbitration Agreement, Akindutire agreed to be bound by the Manual.  *Cf. Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1089-90 (8th Cir. 2021) (finding that plaintiff agreed to terms incorporated by reference into the arbitration agreement).  Additionally, by continuing employment after the Manual was updated, Akindutire expressed assent to the updated terms.  *See Zhang v. UnitedHealth Grp.*, 367 F. Supp. 3d 910, 914-15 (D. Minn. 2019) (finding that continued employment is consideration for employment contract terms and explaining that unilateral modification of employment terms is permitted).  Even if the updated Manual had made substantive changes to the arbitration requirements, Akindutire would still be bound by those new terms.

Akindutire posits various arguments regarding validity of the Arbitration Agreement.  First, he argues that he was given the documents without any ability to modify terms, and he therefore did not assent to the terms.  This argument fails because Akindutire chose to agree to the terms in exchange for employment.  Second, Akindutire argues that the Arbitration Agreement is unenforceable because the purposes of the False Claims Act and the Minnesota Whistleblower Act would be frustrated by private arbitration.  Neither law bars arbitration explicitly and Akindutire agreed to a clear waiver of the right to public proceedings by signing the Arbitration Agreement.  Given the FAA's

strong policy favoring arbitration, the Court finds that those claims may be arbitrated.

Third, he asks for discovery to determine the enforceability of the Arbitration Agreement.

Everything the Court needs to determine enforceability has already been presented.  None

of Akindutire's arguments hold water.

There is a valid arbitration agreement between Akindutire and Northrop.  The

Court now turns to whether the dispute at hand falls within the scope of that agreement.

### 2.    Application of the Arbitration Agreement

A party can only be compelled to submit to arbitration in situations in which they

agreed to be subject to an arbitration agreement.  *See Parm v. Bluestem Brands, Inc.*,

898 F.3d 869, 873 (8th Cir. 2018).  But when a valid arbitration agreement exists, as it

does here, a court must "liberally construe" it, "resolving any doubts in favor of

arbitration."  *Id.* (quoting *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th

Cir. 2015)).  Only if it can be said with "positive assurance that the arbitration clause is

not susceptible of an interpretation that covers the asserted dispute" will a court find that

the dispute falls outside the scope of the arbitration clause.  *3M Co. v. Amtex Sec., Inc.*,

542 F.3d 1193, 1199 (8th Cir. 2008) (quoting *MedCam, Inc. v. MCNC*, 414 F.3d 972, 975

(8th Cir. 2005)).  In deciding whether a dispute falls within the scope, courts first ask

whether the arbitration clause is broad or narrow.  *Fleet Tire Serv. of North Little Rock v.

Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997).  If the clause is broad, a court must

send a claim to arbitration "as long as the underlying factual allegations simply touch

matters covered by the arbitration provision."  *Parm*, 898 F.3d at 874 (quoting *Unison

Co.*, 789 F.3d at 818).  If the clause is narrow, the court must decide if the dispute

16

involves an agreement collateral to the arbitration clause. *Fleet Tire*, 118 F.3d at 621.

Plaintiffs bear the heavy burden of proving that a dispute does not fall within the scope of

an agreement. *Green Tree*, 531 U.S. at 91.

The Arbitration Agreement states that it applies to "ALL CLAIMS COVERED BY

THE ARBITRATION PROGRAM." (Doc. No. 23 ¶ 4.) The Manual further explains

that arbitration is required for "any claim, controversy, or dispute, past, present, or future

which in any way arises out of, relates to, or is associated with" employment at Northrop.

(Doc. No. 23-1 at 3.) These statements constitute broad language. *See Fleet Tire*, 118

F.3d at 621 (finding that the phrase "relating to" "constitutes the broadest language the

parties could reasonably use"); *Parm*, 898 F.3d at 872, 874-75 (finding that a clause

which covered claims "arising out of or relating to" the agreement was clearly broad).

With this broad language in mind, the Court must consider whether Akindutire's

claims, and the underlying factual allegations, "touch matters covered by the arbitration

provision." *Parm*, 898 F.3d at 875 (quoting *Unison Co.*, 789 F.3d at 818). This case far

surpasses that bar. Akindutire's claims involve action he took as an employee at

Northrop and Northrop's responses. Further, the claims squarely fall within the examples

of unlawful discrimination and retaliation in the Manual. It does not matter that

Akindutire has since been terminated and therefore has no current relationship with

Northrop. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286,

1290 (8th Cir. 1984) ("The language of the agreement is broad and the term 'arising out

of' contemplates that for some controversies the arbitration agreement will survive the

17

employment relationship."). Akindutire's non-Title VII claims are clearly within the scope of the Arbitration Agreement.

Akindutire contends that his claims fall within the Franken Amendment exception to the Arbitration Agreement. The Franken Amendment limits federal funding to contractors who require arbitration of Title VII claims related to sexual assault and sexual harassment. Department of Defense Appropriation Act, 2010, Pub. L. No. 111-118, § 8116, 123 Stat. 3409, 3454-55 (2009). It was enacted in response to the rape of a federal contractor's employee. *See* Kathleen McCullough, Note, *Mandatory Arbitration and Sexual Harassment Claims: #MeToo- and Time's Up-Inspired Action Against the Federal Arbitration Act*, 87 Fordham L. Rev. 2653, 2669-72 (2019) (discussing the Franken Amendment and its history). It was not intended to cover discrimination claims based on race or national origin. *See id.* at 2672. Both the text of the Franken Amendment and the Manual provision incorporating the amendment clarify that the exception is only for claims relating to sexual assault and sexual harassment. Akindutire's claim does not involve either, so the Franken Amendment is inapplicable.

Having determined that the Arbitration Agreement between Akindutire and Northrop is valid and that the dispute is within the scope of the agreement, the Court grants Northrop's motion to compel arbitration. 9 U.S.C. § 4. Counts III, IV, and V of the amended complaint shall be arbitrated.

The arbitrated claims are stayed pending arbitration. Additionally, the parties agree that the non-arbitrated claims should also be stayed. (*See* Doc. No. 18 at 24-25; Doc. No. 38 at 11.) The Court stays Count I pending arbitration.

### III.    Motion for Preliminary Injunction

Akindutire asks the Court for a preliminary injunction reinstating him to his position at Northrop.

#### A.    Relief for Counts III-V

When claims are arbitrable, a district court does not have power to grant injunctive relief. *Merrill Lynch*, 726 F.2d at 1292. The reason is that the judicial inquiry necessary may require consideration of the merits which should be left to the arbitrator. *Id.*; *see also Manhattan Grp., LLC v. Automoblox Co.*, No. 10-cv-3918, 2010 WL 5625960, at *4-7 (D. Minn. Dec. 30, 2010). There is an exception to that rule when the parties have contemplated injunctive relief in their arbitration agreement. *Merrill Lynch*, 726 F.2d at 1291-92. This exception only applies if the agreement includes "qualifying contractual language," clear language allowing a court to grant injunctive relief without addressing the underlying merits of the arbitrable dispute. *Manion v. Nagin*, 255 F.3d 535, 538-39 (8th Cir. 2001); *see also Peabody Coalsales Co. v. Tampa Elec. Co.*, 36 F.3d 46, 47 n.3 (8th Cir. 1994) (defining "qualifying contractual language").

Here, the Manual does consider injunctive relief. Parties retain the right to seek a preliminary injunction "to maintain the status quo pending the outcome of arbitration." (Doc. No. 23-1 at 4.) This is qualifying contractual language because it specifies the relief available. *See Manhattan Grp.*, 2010 WL 5625960, at *5-6 (differentiating between language creating a mere right to seek injunctive relief and language specifying relief to which parties are entitled). *Contrast Peabody Coalsales*, 36 F.3d at 47-48 (compelling injunctive relief because the contract specified that parties would continue

performance of their respective obligations pending dispute resolution), *with Manion*, 255 F.3d at 538-39 (affirming denial of injunctive relief because the contract gave only a general right to injunctive relief).  The Court does not need to consider the underlying merits of the arbitrable claims in order to enforce the status quo.

However, Akindutire's procedural adequacy is not the end of the Court's inquiry. Akindutire is only entitled to relief that enforces the status quo.  The status quo is his termination.  Akindutire has not been employed by Northrop for almost two full years. To reinstate him would disrupt current operations and undo the termination that occurred before he filed suit.  *Cf. Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 707 (8th Cir. 2011) (affirming denial of reinstatement because plaintiff's termination was the status quo).  Akindutire is not entitled to injunctive relief on the arbitrated claims.

### B.      Relief for Count I

As to the remaining, non-arbitrated claim, the Court denies the request because Akindutire has not shown that justice requires his reinstatement.  The Court considers four factors in determining whether to grant a preliminary injunction:  (1) the threat of irreparable harm to the moving party; (2) the balance between this harm and the injury that granting the injunction would inflict on the nonmoving party; (3) the moving party's likelihood of success on the merits; and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).  No one factor is determinative.  The central question is whether justice requires preserving the status quo until the merits are determined.  *Id.*  A preliminary injunction is an "extraordinary

remedy," and the moving party bears the burden to establish these factors. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009); *Mgmt. Registry, Inc. v. A.W. Cos.*, 920 F.3d 1181, 1183 (8th Cir. 2019). The harm cannot be speculative— it must be "certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996). Loss of reputation and goodwill can constitute irreparable harm. *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002).

Akindutire alleged that he faces professional harms but put forth no specific examples sufficient to establish irreparable harm. He did not point to any specific job opportunity he lost because of his termination, nor did he point to any example of how his reputation has been tarnished. (*See* Doc. No. 51 ¶¶ 33-38.) These general fears are too speculative to establish threat of irreparable harm. *Cf. Watkins*, 346 F.3d at 846 (finding plaintiffs' general allegations about lost business goodwill failed to establish irreparable harm). It was Akindutire's burden to prove irreparable harm and he has failed to do so. *See Roudachevski*, 648 F.3d at 706-07.

Moreover, his harms are compensable with monetary damages. Akindutire identifies lost salary and lost health insurance, retirement, and other employment benefits as financial harm. (Doc. No. 51 ¶ 36.) These are exactly the types of financially compensable harms that make a preliminary injunction inappropriate. *E.g., Wells Fargo*

21

*Ins. Servs. USA, Inc. v. King*, No. 15-cv-4378, 2016 WL 299013, at *8 (D. Minn. Jan. 25, 2016) ("By definition, lost profits are 'reparable' through money damages."). Similarly, the reputational harms and lost advancement opportunities are compensable monetarily. *Cf. Carhart v. Smith*, 178 F. Supp. 2d 1048, 1061 (D. Neb. 2001) (finding that reputational harms from employment termination could be adequately addressed after trial). Plaintiff has not shown that reinstatement is necessary today.

The absence of irreparable harm alone is enough reason to deny a motion for preliminary injunction. *Dataphase*, 640 F.2d at 114 n.9; *Watkins*, 346 F.3d at 844. Because Akindutire cannot show irreparable harm, the Court need not analyze the remaining factors. The Court respectfully denies his motion.

## IV.    Motions Regarding Plaintiff's Identity

Lastly, Akindutire moves to proceed under a pseudonym and to file documents under seal. (Doc. Nos. 3, 4, 8.) He argues that publication of his identity would risk professional reputational harm, such as inability to find new employment. In opposition, Northrop moves to amend the case caption to include Akindutire's name. (Doc. No. 16.)

There is a strong presumption against use of a pseudonym in litigation. *See Cajune v. Indep. Sch. Dist. 194*, 105 F.4th 1070, 1076 (8th Cir. 2024). The Federal Rules of Civil Procedure dictate that a complaint must name all parties. Fed. R. Civ. Pro. 10(a). Further, there is a First Amendment interest in the public identification of parties. *See Doe v. Zinke*, No. 17-cv-2017, 2018 WL 1189341, at *1 (D. Minn. Feb. 14, 2018). However, the Court may allow a party to proceed pseudonymously if the "need for anonymity outweighs countervailing interests in full disclosure." *Cajune*, 105 F.4th

22

at 1077.  Factors relevant to that inquiry include the sensitivity of the information, potential prejudice to the defendant, and the public interest.  *Id.*; *see also Doe v. Innovate Fin., Inc.*, No. 21-cv-1754, 2022 WL 673582, at *3 (D. Minn. Mar. 7, 2022).

This case does warrant such treatment.  Akindutire's claims are typical of an employment discrimination and retaliation case, and such cases are generally not pursued under a pseudonym.  *Zinke*, 2018 WL 1189341, at *2 (denying motion to proceed with a pseudonym for gender-based employment discrimination and retaliation claims).  Even accepting that reputational harms are heightened in the government contract industry, such harms do not outweigh interests in public litigation.  *Cf. Innovate Fin.*, 2022 WL 673582, at *3 (allowing use of a pseudonym because the case involved allegations of sexual abuse and harassment).  Akindutire argues that his race and national origin constitute sensitive information requiring extra protection, but he has not shown a likelihood of harm motivated by racial animus.  *Cf. Cajune*, 105 F.4th at 1078 (finding that general references to harm were insufficient to establish a compelling fear of future harm, even when the plaintiffs seeking anonymity had alleged past physical harm).  Further, Akindutire faces no retaliation specific to pursuing this case.  Indeed, he claims that the retaliation already occurred when Northrop terminated him; he cannot be terminated twice.  Akindutire has not overcome the presumption for public litigation.  Akindutire's motions to proceed under a pseudonym are denied and Nortrop's motion to amend the caption is granted.  For the same reasons, Akindutire's motions to file information under seal are likewise denied.

23

Additionally, Akindutire requests that any case caption amendment be stayed until arbitration is complete.  (Doc. No. 45.)  He argues that the caption amendment should not occur before other procedural hurdles are met, specifically a decision on the validity of the Arbitration Agreement.  As discussed above, the Court currently has sufficient information to determine the validity of the Arbitration Agreement and found that it is valid.  That justification is moot.  Further, amending the case caption should not wait until arbitration closes.  Judicial efficiency is best served by addressing administrative matters as soon as practicable.  Amending the caption is practicable now.  Akindutire's motion to stay the amendment is denied.

## CONCLUSION

The Court dismisses Akindutire's Title VII retaliation claim but Akindutire's Title VII discrimination claim survives.  The Court finds that the Arbitration Agreement is valid and applies to the dispute at hand, and therefore compels the non-Title VII claims to arbitration.  Akindutire is not entitled to injunctive relief pending arbitration.  Akindutire's requests for anonymity are denied.  Finally, this matter is stayed pending resolution through arbitration.

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1.    Defendant Northrop Grumman Systems Corporation's motion to dismiss (Doc. No. [16]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a.    The motion is **GRANTED** as to Count II.

24

b.      The motion is respectfully **DENIED** as to Count I.

2.      Plaintiff Benedict Akindutire's claim of retaliation in violation of Title VII (Count II) is **DISMISSED WITH PREJUDICE**.

3.      Defendant Northrop Grumman Systems Corporation's motion to compel arbitration (Doc. No. [16]) is **GRANTED**.

4.      This matter is **STAYED** pending resolution via arbitration.

5.      Plaintiff Benedict Akindutire's motions to proceed under a pseudonym (Doc. Nos. [3], [4]) are respectfully **DENIED**.

6.      Plaintiff Benedict Akindutire's motions to file identifying information under seal (Doc. Nos. [3], [8]) are respectfully **DENIED**.

7.      Defendant Northrop Grumman Systems Corporation's motion to amend the case caption (Doc. No. [16]) is **GRANTED**.

8.      Plaintiff Benedict Akindutire's motion to stay any requirement to amend the case caption (Doc. No. [45]) is respectfully **DENIED**.

9.      The Clerk of Court is directed to replace "JLA, *Pseudonym*" with "Benedict Akindutire" on the docket.

10.     Plaintiff Benedict Akindutire's motion for preliminary injunction (Doc. No. [48]) is respectfully **DENIED**.

Dated:  June 9, 2026                              s/Donovan W. Frank
                                                  DONOVAN W. FRANK
                                                  United States District Judge

25